## DEAN v. CALDWELL.

### Opinion delivered December 1, 1919.

1. FOREIGN CORPORATIONS — NONCOMPLIANCE WITH STATE LAWS.— Neither a foreign corporation, which has not complied with the laws of the State, nor its assignee may maintain a suit in the courts of this State.

2. SAME—SAME—ACTION ON NOTES—INTRASTATE BUSINESS.—Appellant, a foreign corporation, entered into a contract with appellee, to assist it in a "trade campaign." Certain goods were shipped by appellant to appellee, for which appellee gave its notes. Appellant had not complied with the laws of this State. *Held*, the transaction between the parties involved only intrastate commerce, and that appellant could not maintain an action on appellee's notes.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little*, Judge; affirmed.

*T. P. Winchester* and *W. R. Martin*, for appellant.

It was error to instruct a verdict for defendant. The foreign corporation was not doing business in this State without complying with Act No. 313, Acts 1907. 136 Ark. 52. The court's authority for its action does not sustain its ruling nor do the cases cited in the majority opinion. In that case this court follows the language of the act, but found the intention of the Legislature to be to include in the punishment not only the corporation doing business in the State but the innocent holder of the contract. Until this court recedes its declaration in that case, it must govern, but the court, we think, nullifies the negotiable instrument law passed six months later. But the facts of this case do not bring it even within the class condemned in the Hogan case. Here the foreign corporation was located for business in Tennessee and sent a salesman to sell a plan for increasing the trade of merchants and certain articles to be used in further-

ance of this plan. The contract is entitled, "Exclusive Contract, Fort Smith." It was signed in Fort Smith, Arkansas, and the notes made payable to the order of Parten Manufacturing Company and executed in settlement of this contract. C. P. Boles, who signed as traveling salesman and only solicited orders, which were sent to the company in Tennessee for acceptance and only when accepted and approved did they become binding. This was no violation of the act, as the corporation was not doing business in Arkansas. It was a Tennessee contract. 247 U. S. 21 is directly in point. See also 246 U. S. 147; 220 *Id.* 187; 90 Ark. 73; Acts 1907, p. 741. The instructions asked by plaintiff should have been given.

*Warner, Harding & Warner,* for appellee.

The court properly held that the contract and transactions constituted doing business in Arkansas contrary to our law and that the notes could not be enforced. There is nothing in the record to show that the business dealing involved an interstate commerce transaction and this is fatal to plaintiff's contention. The fact that it was an interstate transaction must be shown affirmatively. 136 Ark. 52. The burden was on plaintiffs (appellant) to show this, and having failed there is nothing to sustain their contention. 257 Fed. 785. The shipment of goods and sale was strictly a local transaction in the State of Arkansas by a foreign corporation and was not the subject of interstate commerce. 233 U. S. 16; 246 *Id.* 500; 247 *Id.* 21; 87 S. E. 598; 196 S. W. 1132; 95 Ark. 588. The question here is presented squarely in 233 U. S. 16 and is conclusive. See also 246 *Id.* 500 and the Hogan case, *supra.*

McCULLOCH, C. J. This is an action instituted by appellant on negotiable notes executed by appellee to Partin Manufacturing Company, a foreign corporation, which has not complied with the laws of this State with respect to filing copies of articles of incorporation, etc. Appellant is trustee for the assignees of Partin Manufacturing Company.

The notes were executed by appellee pursuant to a written contract between him and Partin Manufacturing Company, as follows:

"Exclusive Drug Contract for Fort Smith.

"Form 10.

"Partin Manufacturing Company.

"Chicago.      (Incorporated)      Des Moines.

General Offices

"Bank of Commerce and Trust Building,

"Memphis, Tennessee.

"Date 3-27-17.

"Partin Manufacturing Company:

"Gentlemen:

"Please ship to us at your earliest convenience, f. o. b. factory, the following goods as described below:

"Capital Prize, automobile, 2 passenger, 4 cylinder roadster. The purchaser is to deliver winner in this trade campaign the winner's choice of one of the following automobiles:" * * * (Here follows articles to be used as prizes, including one automobile, and various articles of jewelry and silverware.)

"Printed and Advertising Matter.

"Twenty-five two color large, illustrated banners; one thousand hand bills; one set of display sign cards; one set of campaign rules for conducting campaign; one set of nominating letters; one set of follow up letters; one thousand trade cards; forty thousand certificates.

2-11-17.

"(1) The undersigned purchaser warrants that his sales for the past twelve months were $21,906.29. On this warranty of sales, Partin Manufacturing Company hereby agrees to increase the purchaser's sales and collections not less than $15,000 in the next twelve months. Partin Mfg. Co. agrees to refund six cents on every dollar the purchaser falls short of the $15,000 increase and agrees to send their bond to purchaser's bank in the sum of $900 to guarantee this agreement. Partin Mfg. Co. reserves the right to increase the number of premiums without cost to the purchaser, if in their opinion it is nec-

essary to bring about the above guaranteed increase. Partin Mfg. Co. reserves the right to require a first and second choice of cars. Partin Mfg. Co. agrees to send a personal representative to assist in getting candidates and helping start this trade campaign.

"(2) To make this contract binding on Partin Mfg. Co. and as conditions precedent to any recovery under the provisions of paragraph (1.) the undersigned purchaser agrees to accept the goods described above promptly on arrival; keep the goods well displayed in his place of business, to pay all obligations entered into under this contract at maturity; to report every thirty days his gross sales for one year; follow out instructions and furnish such other information as Partin Mfg. Co. may desire, including verified final reports furnished by Partin Mfg. Co.

"(3) Terms: All the above named goods are to be included in the purchase price of $900. Three per cent off, cash in ten days. By special agreement the above can be paid in four installments of two hundred and twenty-five dollars ($225) each, in one, two, four, six, eight months, if notes attached hereto properly signed accompanying this contract, and Partin Mfg. Co. is authorized to detach same on acceptance of same. If contract is not accepted notes are to be canceled and returned to purchaser.

"(4) In consideration of the special methods set forth in your plan and the terms and agreements herein contained, this contract can not be countermanded, but to stand as given on day and date hereof. Any verbal or written agreement not embraced herein will not be binding on Partin Mfg. Co. This contract is given with a full and complete understanding of the conditions herein and after reading same.

"Campaign closes (club) each 40 days."

The trial court gave to the jury a peremptory instruction in favor of appellee on the ground that Partin Manufacturing Company was a foreign corporation which had, without having complied with the laws of this

State, transacted the business in the State out of which appellee's obligation arose. The contention of appellant is that the transaction between appellee and Partin Manufacturing Company constituted interstate commerce and was not within the control of State laws.

The decision of the case turns, therefore, on the question whether or not the transaction was interstate commerce. It seems clear to us that the contract was not interstate commerce. It was not for the sale of goods to be shipped from another State. The sale of certain articles of merchandise was a mere incident to the main purpose of the contract which was one whereby Partin Manufacturing Company undertook to carry on, for appellee's benefit, what is designated in the writing as a "trade campaign." Appellee was a merchant in the city of Fort Smith, and his sales for the previous year had been $21,926.29, and Partin Manufacturing Company undertook in the contract, for a consideration, to provide a plan and the means to increase appellee's annual sales not less than $15,000. Partin Manufacturing Company agreed to furnish these articles for the prices and the printed literature for advertising purposes, and to "send personal representative to assist in getting candidates and helping start this trade campaign." The campaign was to be carried on in Fort Smith where appellee was doing business, and the amount of compensation to be received by Partin Manufacturing Company was dependent on the amount of increase in appellee's sales. The transaction was purely local. The business was *intra-* and not *inter*-state, and the sale of goods was merely an incident. The contract did not necessarily imply a shipment from outside of the State, but, even if it did, that would not alter the character of the main transaction, to which the sale of goods was a mere incident.

This conclusion is supported by the decisions of the Supreme Court of the United States in *Browning* v. *Waycross,* 233 U. S. 16, and *General Railway Signal Company* v. *Virginia,* 246 U. S. 500. The question arose in a different form in those cases, but the principles announced are the same as in the instant case.

The case of *York Manufacturing Co.* v. *Colley*, 247 U. S. 21, on which learned counsel for appellant rely, is not applicable.

Under our statutes, not only the offending corporation, but its assignee is prohibited from maintaining suit in this State without having first complied with the laws of the State. *Hogan* v. *Intertype Corporation*, 136 Ark. 52.

Judgment affirmed.